**Bruce I. GHEEN and Jean Gheen, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15541.**

United States Court of Appeals Sixth Circuit.

May 8, 1964.

W. Dean Hopkins, Cleveland, Ohio (W. Dean Hopkins, H. Guy Hardy, McDonald, Hopkins & Hardy, Cleveland, Ohio, on the brief), for petitioners.

George F. Lynch, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Gilbert A. Andrews, Jonathan S. Cohen, Attys., Department of Justice, Washington, D. C., on the brief), for respondent.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Petitioners seek a review of the decision of the Tax Court of the United States holding that claimed interest payments deducted by petitioners on their federal income tax returns for 1957 and 1958 did not qualify as "interest * * * on indebtedness" within the meaning of Section 163(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 163(a).

Petitioners filed joint income tax returns as husband and wife for 1957 and 1958 with the District Director of Internal Revenue at Cleveland, Ohio. For the years involved in this case they kept their books and filed their income tax returns for calendar years on the cash receipts and disbursements basis.

Since the wife is a petitioner herein only because she filed joint returns with her husband, Bruce I. Gheen will be referred to hereinafter as the petitioner.

We adopt and incorporate herein the statement of facts as found by the Tax Court, which is based upon the stipulation of the parties:

During 1957 and 1958 petitioner was a life insurance agent specializing in estate planning and business insurance matters and was president of Retirement

Plans, Inc. In 1956, an associate of petitioner introduced him to M. Eli Livingstone (hereinafter referred to as "Livingstone") of Boston, Massachusetts. Livingstone and petitioner collaborated on a business arrangement involving one of petitioner's clients whereby Livingstone made a profit. As a result of this business association, Livingstone proposed that petitioner enter into a transaction involving United States Treasury notes. Petitioner, who is not a dealer in securities, had never purchased United States Treasury notes prior to 1957.

By letter dated December 20, 1957, petitioner ordered from C. F. Childs and Company (hereinafter sometimes referred to as "Childs") $500,000 of 1½ percent United States Treasury notes of October 1, 1962, and requested delivery thereof to Corporate Finance Corporation (hereinafter sometimes referred to as "CFC") against payment of $474,271.98. The actual order was placed by Livingstone & Company.

By letter of the same date CFC directed Childs to deliver the Treasury notes to R. W. Pressprich & Co. (hereinafter sometimes referred to as "Pressprich"), in New York City. Childs' confirmation of the transaction to petitioner, dated December 20, 1957, noted: "Dely NY at R. W. Pressprich." The confirmation slip stated a price of $472,500 and accumulated interest to December 26, 1957, of $1,771.98.

By letter of the same date Livingstone's secretary directed petitioner to "sign the Notes and letter of instruction, and return them to this office together with your check in the amount of $28,986.43 made payable to Corporate Finance Corporation which represents the prepayment of interest."

By letter of the same date (but noting "Delivery Date: December 26, 1957") petitioner directed CFC to receive the Treasury notes for his account against payment of $474,271.98. The letter accompanied petitioner's promissory note dated December 26, 1957, in favor of CFC for $472,500 payable on October 1, 1962, with interest at two and seven-eighths percent. The note stated that $28,986.43 of interest had been prepaid and the balance of $35,728.02 was to be paid as follows: $1,978.02 on April 1, 1958, and $3,750 semi-annually beginning October 1, 1958. The note recited as follows:

"The undersigned gives to the obligee a lien against the securities pledged for the amount of the obligation set forth herein and gives to the obligee the right to hypothecate and use the securities pledged for any purpose while so pledged. Said right is not to be inconsistent in any manner with the ownership by the undersigned of the said collateral, and with the right to the undersigned to obtain the return of the collateral at any time upon tender of payment of the amount due hereunder.

"The undersigned shall not be called upon to furnish additional collateral during the term of this Note."

On or about December 23, 1957, petitioner mailed his check in the amount of $28,986.43 to CFC as payment of the amount called for as interest by the December 26, 1957, note. This check was deposited by CFC to its account and cleared petitioner's bank on December 30, 1957.

On December 20, 1957, CFC sold short $500,000 United States Treasury one and one-half percent notes of October 1, 1962, to Pressprich. CFC used the Treasury notes ordered in petitioner's name to cover its short position with Pressprich.

By letter dated October 28, 1958, but addressed on or about October 24, petitioner ordered from Childs $500,000 of one and one-half percent United States Treasury notes of April 1963, and requested delivery thereof to CFC against payment of $455,679.95. The actual order was placed by Livingstone & Company.

By letter dated November 1, 1958, CFC directed Childs to deliver the Treasury

notes to Cruttenden, Podesta & Co. (hereinafter sometimes referred to as "Cruttenden"). Childs' confirmation of the transaction to petitioner, dated October 24, 1958, noted: "Dely N.Y." The confirmation slip stated a price of $455,000 and accumulated interest to November 3, 1958, of $679.95.

By letter dated October 24, 1958, Livingstone's secretary directed petitioner to issue checks to South Side Bank and Trust Co. (hereinafter sometimes referred to as "South Side") in the amounts of $22,883.26 and $21,793.58. Enclosed with the letter were documents relating to the sale requiring petitioner's signature and "a check in the amount of $38,500.00 payable to your order, representing the proceeds of your loan with us."

Petitioner executed and delivered to CFC a note dated November 3, 1958, in favor of CFC for $250,000 payable April 1, 1963, with interest at three percent. The note contained recitations regarding collateral ("$500,000.00 U. S. Treasury 1½% Notes due April 1, 1963") in exactly the same language as the December 26, 1957, note, supra, except that petitioner was permitted to obtain the return of the collateral only on April 1, 1963, instead of "at any time." No amounts were paid as interest on this note in 1958.

Petitioner executed and delivered to South Side two notes both dated November 3, 1958, both to be paid on April 1, 1963, and both with interest at 4¹⁵⁄₁₆ percent per annum. The notes, for $105,000 and $100,000, were accompanied by petitioner's checks for $22,883.26 and $21,793.58, respectively, those being prepayments of the amounts called for as interest on the notes. The checks cleared petitioner's bank on November 6, 1958. By letters dated November 3, 1958, petitioner directed South Side to pay the proceeds of the two notes to CFC, which South Side did by crediting CFC's account. Petitioner's notes to South Side contained no recitals regarding collateral and South Side received no collateral in connection with this transaction. This "loan" was arranged by Livingstone & Company.

By letters dated November 3, 1958, CFC confirmed the purchase of those notes from South Side and sent South Side its (CFC's) check for the face value of the note. South Side endorsed the notes to CFC "without recourse and without warranty, guaranty or representation of any nature whatsoever." By letter dated November 12, 1958, South Side notified petitioner of its sale of petitioner's notes to CFC. By letter of the same date South Side notified CFC that South Side had credited to CFC's account $44,189.39 "representing unearned interest due you on these two loans, less our charges."

On October 24, 1958, CFC made a short sale of $500,000 United States Treasury 1½ percent notes of April 1, 1963, to Cruttenden. CFC used the Treasury notes ordered in petitioner's name to cover their short position with Cruttenden.

In his 1957 return, petitioner's itemized interest expense deductions included $28,986.43 to CFC, which amount was disallowed by respondent. In his 1958 return, petitioner's reported income included $5,728.02 from U. S. Treasury notes. His itemized interest expense deductions included $5,728.02 to CFC and $44,676.84 to South Side. Respondent disallowed the deduction for the amount paid to South Side.

On or about September 7, 1962, petitioner arranged to borrow $476,284.13 from the National City Bank (hereinafter sometimes referred so as "National City") Cleveland, Ohio. Petitioner pledged $500,000 United States Treasury 1½ percent notes of October 1, 1962, as collateral in this transaction.

National City received this collateral by paying petitioner's December 26, 1957, promissory note to CFC. The mechanics of this transaction were as follows: (1) National City instructed the First National Bank of Boston, Massachusetts, to pay petitioner's note to CFC by charging their account upon delivery of the note and collateral securities. (2)

CFC ordered Treasury notes similar to the ones pledged as security by petitioner to be delivered to First National along with petitioner's December 26, 1957, note. (3) First National paid for the Treasury notes and charged the account of National City. (4) The Treasury notes and petitioner's note dated December 26, 1957, were then delivered to National City.

We agree with the Tax Court that, under these facts, petitioner never acquired, as a result of the 1957 and 1958 transactions, control of either the funds purportedly lent to him or the Treasury notes purportedly sold to him, and that he had neither the use nor the forbearance of money. It therefore is our opinion that the deductions claimed by petitioner do not constitute "interest * * * on indebtedness" within the meaning and intent of Section 163(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 163(a). Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed. 2d 128; Lewis v. Commissioner, 328 F.2d 634 (C.A.7); Bridges v. Commissioner, 325 F.2d 180 (C.A.4); Nichols v. Commissioner, 314 F.2d 337 (C.A.5); Rubin v. United States, 304 F.2d 766 (C.A.7); Lynch v. Commissioner, 273 F. 2d 867 (C.A.2); Goodstein v. Commissioner, 267 F.2d 127 (C.A.1); Broome v. United States, 170 F.Supp. 613, 145 Ct.Cl. 298. See also Deputy v. DuPont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484.

Petitioner undertakes to distinguish the foregoing cases on the ground that the taxpayers there involved knew or should have known that they were not entering into bona fide transactions, whereas in the instant case the treasury notes were sold without the knowledge or consent of petitioner.

As said by Judge Friendly in Lynch v. Commissioner, supra:

"We find no force in taxpayers' attempt to avoid the teaching of those cases on the basis that taxpayers did not know of the round-robin nature of the transaction and believed they were incurring a debt to Gail. Save in those instances where the statute itself turns on intent, a matter so real as taxation must depend on objective realities, not on the varying subjective beliefs of individual taxpayers." 273 F.2d at 872.

The decision of the Tax Court is affirmed.