Otto **CORUM** and Katherine Corum, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

A. R. **WHITTINGTON** and Mildred Whittington, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. Nos. 2137, 2138.

United States District Court
W. D. Kentucky.

March 1, 1967.

S. Russell Smith, Louisville, Ky., for plaintiffs.

Ernest W. Rivers, U. S. Atty., Louisville, Ky., Michael B. Arkin, Trial Attorney, Tax Division, Department of Justice, Washington, D. C., for defendant.

JAMES F. GORDON, District Judge.

### FINDINGS OF FACT

1. The plaintiffs in Civil No. 2137 are Otto Corum and Katherine Corum, husband and wife, who reside in Madisonville, Kentucky, and the plaintiffs in Civil No. 2138 are A. R. Whittington and Mildred Whittington, husband and wife, who reside in Madisonville, Kentucky.

2. The plaintiffs in both actions filed timely joint federal income tax returns for the calendar years 1961, 1962 and 1963 with the District Director of the Internal Revenue Service at Louisville, Kentucky. The wives are involved in this

proceeding solely by reason of their having joined with their husbands in the filing of those joint income tax returns.

3. Plaintiff Whittington seeks to recover $14,867.64 in additional income taxes, together with $2,619.83 in assessed interest thereon, which he paid on December 10, 1965, and which represents a portion of a larger tax deficiency asserted against him by the Internal Revenue Service. He filed a timely claim for refund of the $17,487.47 so paid by him, which claim was disallowed by the Internal Revenue Service on July 1, 1966.

4. Plaintiff Corum seeks to recover $16,942.44 in additional income taxes for the year 1959, and $2,983.95 in assessed interest thereon, $19,717.28 of which he paid on December 10, 1965, and the remaining $209.11 of which he paid December 20, 1965. He filed a timely claim for refund to recover the $19,926.39 so paid by him, which claim was disallowed by the Internal Revenue Service on July 21, 1966.

5. The claims for refund so filed by both Corum and Whittington are based upon the alleged improper disallowance by the Internal Revenue Service of the deductions each of them claimed on their individual returns for the year 1962 of their respective distributive shares of the partnership loss sustained during that year by the partnership of Corum and Company, of which partnership Corum and Whittington were equal partners.

6. The partnership of Corum and Company during the year 1962 was engaged in the road building business and the construction of bridges and highways as well as other types of general construction work. The income tax return filed by it for that year reflects a loss incurred in the operation of its business in the amount of $94,605.07. Corum claimed $47,302.53 of this loss as a deduction on his individual income tax return for the year 1962 and Whittington claimed the remaining $47,302.53 of that loss as a deduction on the individual income tax return he filed for that year.

7. Under their Articles of Co-partnership, Corum and Whittington share the profits and the losses of that partnership equally, and such was true during the year 1962.

8. The capital account of Corum in the partnership of Corum and Company at the beginning of the year 1962 was a negative $126,878.52, and the capital account of Whittington in that partnership at the beginning of the same year was a negative $135,478.31. The liabilities of that partnership at the beginning of the year 1962 were $582,786.08, all of which were bona fide debts of the partnership. The liabilities of that partnership increased by $30,527.98 during the year 1962 so that, at the end of the year 1962, the total liabilities owing by that partnership amounted to $613,314.06, all of which represented bona fide debts and obligations of that partnership. Corum and Whittington each contributed $7,015.00 to the capital of the partnership of Corum and Company during the year 1962, in addition to the disputed contributions of capital made by them to that partnership as set forth in paragraph 9 immediately below. Corum withdrew $41,191.17 from the partnership of Corum and Company during the year 1962, and Whittington withdrew $20,641.57 from that partnership during the same year.

9. On December 28, 1962, Corum and Whittington each borrowed $40,000.00 personally from a Madisonville bank and contributed those sums to the capital of the partnership of Corum and Company on that same date by depositing that $80,000.00 in the bank account maintained by the partnership. Before these borrowed monies were contributed to the capital of the partnership, its working capital was $40,700.43. After those borrowed funds were contributed to the capital of the partnership, and on December 31, 1962, the working capital of the partnership was $120,700.43. On January 15, 1963, Corum and Whittington each withdrew $40,000.00 from their capital accounts in the partnership of Corum and Company and used those funds to repay the $40,000.00 personal note each of them executed to the Madisonville bank on December 28, 1962.

10. The Internal Revenue Service determined and the defendant claims that, for the year 1962, Corum was entitled to deduct none of his share of the distributive loss sustained by the partnership of Corum and Company during that year, and that Whittington was entitled to deduct only $1,637.42 of his distributive share of the loss sustained by that partnership during the year 1962. This conclusion and assertion is based upon the following computation of the adjusted basis of the respective partnership interests of Corum and Whittington in the partnership of Corum and Company at the end of 1962:

|  | Corum | Whittington |
|---|---|---|
| Capital account at beginning of year | (126,878.52) | (135,478.31) |
| Share of liabilities at beginning of year | –0– | –0– |
| Adjusted basis at beginning of year | –0– | –0– |
| Increases during year: | | |
|   Capital contributions | 7,015.00 | 7,015.00 |
|   Net increase in liabilities | 15,263.99 | 15,263.99 |
| Decreases during year: | | |
|   Withdrawals | (41,191.17) | (20,641.57) |
| Adjusted basis at end of year before taking loss sustained during 1962 into account | –0– | 1,637.42 |
| Amount of 1962 loss allowable, limited by IRC § 704(d) to before-loss adjusted basis | –0– | 1,637.42 |
| Adjusted basis at end of year | –0– | –0– |

11. Corum and Whittington each claim that he is entitled to deduct on his individual income tax return for the year 1962 the entire amount of his respective distributive share of the partnership loss sustained by the partnership of Corum and Company during that year. Their claims are based upon the following computation of the adjusted basis of their respective partnership interest in the partnership of Corum and Company at the end of 1962:

|  | Corum | Whittington |
|---|---|---|
| Capital account at beginning of year | (126,878.52) | (135,478.31) |
| Share of liabilities at beginning of year | 291,393.04 | 291,393.04 |
| Adjusted basis at beginning of year | 164,514.52 | 155.914.73 |
| Increases during year: | | |
|   Capital contributions | 47,015.00 | 47,015.00 |
|   Net increase in liabilities | 15,263.99 | 15,263.99 |
| Decreases during year: | | |
|   Withdrawals | (41,191.17) | (20,641.57) |
| Adjusted basis at end of year before taking loss sustained in 1962 into account | 185,602.34 | 197,552.15 |
| Amount of 1962 loss | 47,302.53 | 47,302.53 |
| Adjusted basis at end of year | 138,299.81 | 150,249.62 |

12. The issues to be decided by this Court are as follows:

(a) In determining the limitation imposed by § 704(d) of the Internal Revenue Code of 1954 upon the allowance of a partner's distributive share of partnership loss as a deduction on the individual return of the partner for the year in which the partnership loss is sustained, must the adjusted basis of the partner's interest in the partnership at the end of that year include his distributive share of all partnership liabilities, as the plaintiffs contend, or should it include only the partner's distributive share of increases in partnership liabilities during that year, as the defendant contends? This is an issue of law which will be considered later.

(b) Do §§ 704(d) and 722 of the Internal Revenue Code of 1954 require that a contribution of money or property to a partnership be made for a valid business reason before the same may be included as an addition to the adjusted basis of the partner's interest in that partnership for the purpose of determining the limitation on the allowability of partnership losses set forth in § 704(d) of that Code? The defendant contends that those sections do impose such a requirement, and the plaintiffs contend that no such requirement is imposed by those sections of the Code. This, again, is an issue of law which will be considered later.

(c) If there is any such requirement as that set forth in subparagraph (b) above, was the $80,000.00 that Corum and Whittington contributed to the capital of their partnership on December 28, 1962, contributed by them for a bona fide valid business purpose? The Internal Revenue Service asserted, and the defendant claims, that it was but a sham contribution of capital. Corum and Whittington claim that they contributed this $80,000.00 to the capital of Corum and Company for the valid business purpose of increasing the bidding and bonding capacity of their partnership upon construction contracts and otherwise improving its year-end financial statement for credit purposes. This is an issue of fact.

13. There was substantial evidence introduced at the trial to prove, and the Court finds, that the $80,000.00 which Corum and Whittington borrowed personally on December 28, 1962, and which they contributed on the same date to the partnership of which they were equal partners was contributed to the capital of that partnership in a bona fide manner and for the sound business purpose of increasing the working capital of that partnership so as thereby to increase the bidding power and bonding capacity of that partnership in bidding upon, obtaining and bonding construction contracts, particularly with the Kentucky Department of Highways for the construction of roads, bridges and highways, which otherwise could not have been obtained. This finding of fact is based upon the following uncontroverted evidence:

(a) Before anyone engaged in the road construction business may even bid upon a contract with the Kentucky Department of Highways for the construction of a public road a "Certificate of Eligibility" must be obtained by him from the Kentucky Department of Highways. This is a statutory requirement set forth in KRS 176.130:

> "Every person who seeks to procure, bid upon, or offer to bid upon any contract with the department for the construction or maintenance of any public road or any section thereof, before procuring a proposal form or submitting any bid to obtain such contract, shall procure a certificate of eligibility from the department to bid on such work."

(b) Before the Kentucky Department of Highways can issue a certificate of eligibility to any contractor, that contractor must submit to the Department of Highways a year-end financial statement in which he demonstrates to the satisfaction of the Department that he possesses "net current assets" or "working capital" sufficient to enable him to execute satisfactorily any contract the

Department of Highways may award him. This, again, is a statutory requirement set forth in KRS 176.150:

"No bidder shall be given a certificate of eligibility unless his financial statement and the investigation made by the department show that he possesses net current assets or working capital sufficient in the judgment of the department to render it probable that he can satisfactorily execute his contracts and meet obligations therein incurred."

(c) The Kentucky Department of Highways has been given statutory authority by KRS 176.140 to adopt rules and regulations respecting the financial status, experience and other requirements which highway contractors must fulfill before a certificate of eligibility is issued by it with respect to any one particular contractor, and that Department has exercised the rule-making power so given to it. It promulgated under its rule-making power "Rules and Regulations Relating to the Qualification of Road Contractors and Material Suppliers to the Department of Highways," effective August 1, 1962, and which were in effect during the year 1963. One of the rules and regulations so promulgated by it reads as follows:

"The allowable net current assets as determined from the financial statement shall be multiplied by a factor of twelve (12) to establish the maximum financial capacity rating * * * "

of the contractor to whom it can issue a certificate of eligibility to bid on highway construction contracts.

(d) It is a common practice among highway contractors in Kentucky to improve their year-end financial statements by utilizing all available means of increasing their "net current assets" so as thereby to increase their bidding capacity or "maximum financial capacity rating" with the Kentucky Department of Highways. The $80,000.00 contributed by Corum and Whittington to the capital of their partnership on December 28, 1962, was contributed by them for this pur-

pose. If that $80,000.00 had not been contributed to the capital of the partnership, it would have had a bidding capacity on highway construction contracts subsequent to April 30, 1963, of only $488,404.00—i. e., the Department of Highways could not issue a certificate of eligibility to it for more than that amount, and therefore it would not have been able to bid upon construction contracts after April 30, 1963, in excess of $488,404.00. After the $80,000.00 was contributed by Corum and Whittington to the capital of their partnership in a manner which increased the "working capital" of that partnership by the amount so contributed, the "bidding capacity" of that partnership was increased by $960,000.00—i. e., it could have obtained a certificate of eligibility from the Department of Highways entitling it to bid upon highway construction contracts having an aggregate completion cost of $1,448,404.00.

(e) Bonding companies insist upon contractors meeting certain financial requirements before they will issue or execute as surety bid bonds and performance bonds with respect to all types of construction, including highway construction. In order to obtain a bid bond or qualify for a performance bond a rule of thumb adopted by most of the surety industry is that the net liquid assets or working capital of a contractor, as shown on his year-end as well as all interim financial statements, must be at least 10 percent of the total work program contemplated by that contractor to be bonded. The $80,000.00 contributed by Corum and Whittington to the capital of their partnership on December 28, 1962, was contributed by them for the purpose of increasing the ability and capacity of Corum and Company to obtain bid and performance bonds from bonding companies, and it had the desired effect. Before that $80,000.00 was contributed to the capital of the partnership, it had a bid bond and performance bond limit with the various bonding companies of approximately $400,000.00 and would have been

able to obtain bonds of that type up to but not in excess of that amount. After the $80,000.00 was contributed by Corum and Whittington to the capital of their partnership in a manner that increased its "working capital" by the amount so contributed, the bid bond and performance bond capacity of that partnership was increased by approximately $800,-000.00, and during the year 1963 it would have been able to obtain bonds of that nature from various bonding companies entitling it to bid upon and perform construction contracts, including those for the construction of highways, having an aggregate completion cost of approximately $1,200,000.00.

(f) It is a common practice among representatives of bonding companies that become surety on bid and performance bonds to encourage contractors to improve their year-end working capital in the manner outlined in subparagraph (d) above, so as to increase the particular contractor's bonding capacity as well as demonstrate that the contractor has the ability to raise working capital when it is needed.

(g) Corum and Whittington have been in the highway and general construction business in one capacity or another for more than 20 years. Each year they have followed the practice outlined in subparagraph (d) above or a similar practice, so as to increase their working capital and thereby increase their bidding and bonding capacity as well as their general credit rating and position.

(h) Prior to the end of 1962, Corum and Whittington had no knowledge of what highway or other construction contracts would be available during the year 1963 upon which their partnership would be able to bid within the limits of its capabilities. By mid-January of 1963, however, it became apparent to them that the Kentucky Department of Highways would concentrate its major effort in respect of highway construction in the mountainous regions of Eastern Kentucky, and that there would be very little construction work available in Central

and Western Kentucky upon which Corum and Company would be able to bid. Construction work in the mountainous areas of Kentucky requires the removal of substantial quantities of rock, for which Corum and Company was not equipped. As a consequence, the partnership had no immediate need for the $80,000.00 contributed by Corum and Whittington on December 28, 1962, to its capital, and they withdrew that sum from the partnership on January 15, 1963. This was done for sound business reasons.

(i) Whenever the partnership of Corum and Company actually needed money to defray expenses incurred in performing a construction contract or for other purposes, Corum and Whittington would contribute to the capital of that partnership such funds as it actually needed. On April 29, 1963, $72,000.00 was contributed by them to the capital of Corum and Company, of which $45,000.-00 was contributed by Corum and the remaining $27,000.00 by Whittington. In the more than 20 years Corum and Whittington had been bidding upon and performing highway and other types of construction contracts, they never defaulted in the performance of those contracts.

(j) The mere fact that the $80,000.00 contributed by Corum and Whittington to the capital of Corum and Company on December 28, 1962, was in the bank account and capital of that partnership for only 19 days does not establish that the original contribution of it was a sham or otherwise was lacking in valid business purpose. That money was subject to the claims of any creditor of the partnership during such period of time, and both Corum and Whittington testified that they would not have withdrawn any part of it on January 15, 1963, if any creditor of Corum and Company had wished to be paid. The Court finds their testimony credible.

(k) The $80,000.00 borrowed by Corum and Whittington from the Madisonville bank and contributed by them on De-

cember 28, 1962, to the capital of Corum and Company was not done for the purpose of obtaining a tax deduction or a tax benefit.

14. The defendant offered little evidence to prove that the $80,000.00 contributed by Corum and Whittington on December 28, 1962, was not done for a sound and valid business purpose. The facts it proved are inconclusive and, in weighing the cumulative and probative effect of them, the Court finds that they fall far short of establishing that the $80,000.00 contribution to the capital of the Corum and Company partnership was motivated by tax reasons or any reason other than enabling that partnership to enhance its bonding and bidding capacity by increasing its working capital. Those facts, as the Court finds them to be, are as follows:

(a) The partnership of Corum and Company submitted a financial statement prepared by a certified public accountant, to the Kentucky Department of Highways for its year ended December 31, 1960, on the basis of which the Department of Highways issued to it a certificate of eligibility certifying it as being qualified to bid on contracts during the year 1961 aggregating $1,688,520.00. This certificate of eligibility was extended from December 31, 1961, to April 30, 1962, without any additional financial statements being submitted to the Department of Highways by Corum and Company.

(b) The partnership of Corum and Company submitted a financial statement, prepared by a certified public accountant, to the Kentucky Department of Highways for its year ended December 31, 1961, on the basis of which the Department of Highways issued to it a certificate of eligibility certifying it as being qualified to bid on contracts during the year 1962 aggregating $1,649,632.00. This certificate of eligibility was extended from December 31, 1962, to April 30, 1963, without any additional financial statements being submitted to the Department of Highways by Corum and Company.

(c) The partnership of Corum and Company submitted no financial statements for its year ended December 31, 1962, to the Department of Highways and did not apply to the Highway Department for a certificate of eligibility for the period May 1, 1963, through December 31, 1963, because of the facts set forth in subparagraph (h) of paragraph 13. Had there been sufficient highway construction work available in Central and Western Kentucky upon which Corum and Company could have bid within the limits of its capabilities subsequent to April 30, 1963, it could have applied for a new certificate of eligibility from the Department of Highways to enable it to bid upon such highway construction work.

(d) Corum and Company, Incorporated, a corporation, was formed in 1960. On May 31, 1962, the board of directors of the corporation accepted an offer of Corum and Company, partnership, to transfer partnership road construction assets, receivables, liabilities and equipment to the corporation. On June 1, 1962, such road construction assets, receivables, equipment and liabilities were transferred to the corporation. The fact that the partnership transferred all of its road construction assets and equipment on June 1, 1962, did not prevent or impede it from bidding upon and performing highway construction contracts. The filings it made with the Kentucky Department of Highways on March 31, 1961, and December 31, 1961, show that it was renting all of its heavy equipment and most of its other equipment from Equipment Rental Company, Inc., a corporation owned by Corum and Whittington.

(e) The corporation applied for the Kentucky Department of Highways certificate of eligibility and submitted a certified financial statement dated August 8, 1962. Such certificate was issued, qualifying the corporation to bid

on contracts not exceeding $1,048,344.00 for the corporate fiscal year 1963. Thereafter the corporation applied for a certificate of eligibility and submitted a financial statement dated May 31, 1963. Such certificate was issued for the corporate fiscal year 1964 qualifying it to bid on contracts not exceeding $2,079,-768.00.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of these causes of action under and by virtue of 28 U.S.C. § 1346(a) (1).

2. It is readily apparent that the plaintiffs are entitled to prevail if they are correct in any of their contentions.

If a partner's distributive share of all partnership liabilities at the end of the year must be included in determining the adjusted basis of his partnership interest, rather than his distributive share of only the increases in partnership liabilities during the taxable year in question, then the adjusted basis of the respective interest of Corum and Whittington in their partnership at the end of 1962 (before taking into account the $47,302.53 distributive share of the loss sustained by that partnership during the year 1962 to which each was entitled) was more than sufficient to absorb their shares of such loss, even if the disputed $80,000.00 in capital contributed by them during 1962 is regarded as a sham and is eliminated. Under these circumstances the adjusted basis of Corum's partnership interest would be $145,602.33 and that of Whittington would be $157,552.15 before taking into account the $47,302.53 distributive share of the loss sustained by their partnership during 1962 to which each was entitled, and hence the limitation imposed by § 704(d) of the Internal Revenue Code of 1954 would have no application.

On the other hand, the defendant admits that if the $80,000.00 contributed by Corum and Whittington to the capital of their partnership on December 28, 1962, was contributed for a valid business purpose, or if there is no statutory requirement that a contribution to the capital of a partnership must be made for a valid business purpose, then the adjusted basis of the respective partnership interests of Corum and Whittington in Corum and Company at the end of 1961, 1962 and 1963 would be more than sufficient to absorb their respective distributive shares of the partnership losses sustained in all three of those years even if only increases in partnership liabilities during those years are included in determining the adjusted basis of their respective partnership interests, and thus they would be entitled to a refund of all sums each seeks to have refunded to him.

This Court, therefore, is called upon to reach a conclusion on three points of law, viz., (a) the statutory requirements respecting the business purpose of contributions of capital to a partnership, (b) whether the contributions Corum and Whittington made to the capital of their partnership in December of 1962 were made with a valid business purpose in mind, if such a purpose is required by statute, and (c) the statutory requirements respecting the inclusion of partnership liabilities in determining the adjusted basis of a partner's interest in the partnership of which he is a member.

(a) *Statutory Requirements Respecting Business Purpose of Capital Contributions of a Partnership*

Section 704(d) of the Internal Revenue Code of 1954 provides that:

"A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership."

and § 722 of that Code states as follows:

"The basis of an interest in a partnership acquired by a contribution of

property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution."

There is nothing in either of these two statutes requiring a contribution of money or property by a partner to be made for valid business purposes in order for the contribution to become a part of and increase the basis of the partners' interest in the partnership to which the contribution is made. If there is to be such a requirement, it must be read into those statutes.

The government suggests that such a requirement be inserted by judicial decision into the statutes just mentioned because Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, originated the "bona fide business purpose" doctrine in another setting far removed from the present one. The government also relies on Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960), and Gheen v. Commissioner of Internal Revenue, 331 F.2d 470 (6 Cir. 1964), as well as Willis, Handbook of Partnership Taxation, pp. 170–173 (1957). Both parties admit that there is no case authority directly on point in this area.

There are equally cogent reasons, and impressive authority in other fields, which run counter to the government's contention. In Humphreys v. Commissioner of Internal Revenue, 301 F.2d 33 (6 Cir. 1962), for example, that court approved a deduction claimed by a taxpayer for amortization of bond premiums in addition to a deduction of the taxpayer's equity in the same bonds which he had given to a charity. The government, relying on the *Gregory* case, claimed that the taxpayer had no investment purpose when he bought the bonds, and his doing so was merely one step in a sham transaction whereby he sought to obtain a double deduction. As to this, the court said:

"The difficulty with this contention is that both deductions are allowed by statute. It cannot be controverted that the purchase of the bonds and the gifts to charity were real genuine transactions though motivated by tax considerations. If the statutory deductions allowed therefor produce bizarre results the remedy is with Congress and not with us."

The Court does not find it necessary to decide this issue, however, and expressly declines to do so in view of the findings of fact heretofore made and the next succeeding conclusions of law.

(b) *Business Purpose Justifying the Capital Contributions Made by Corum and Whittington on December 28, 1962*

Assuming that there is an implied requirement contained in §§ 704(d) and 722 of the Internal Revenue Code of 1954 that contributions by a partner to a partnership must be made for a valid business purpose before they will increase the basis of the partners' interest in the partnership to which such contributions are made, that requirement has been met in this case. The contribution of $80,000.00 made by Corum and Whittington to their partnership on December 28, 1962, was for the sound, bona fide, reasonable and valid business purpose of increasing the bidding and bonding capacity of that partnership by enhancing its working capital and was not motivated by the impact it might have upon their personal tax liability.

This Court was confronted with almost an identical fact situation and decision to make in The Dahlem Construction Company v. United States, 268 F.Supp. 103 (D.C.W.D.Ky.1966). There, a corporation engaged in the construction business retained its earnings for the very same purpose Corum and Whittington contributed the $80,000.00 they did to their partnership—to increase its working capital and, by so doing, increase its bidding and bonding capacity. The question was whether the retention of its earnings for such a purpose constituted an accumulation of earnings for "the reasonable needs of the business"

within the meaning of that term as used in § 533(a) of the Internal Revenue Code of 1954. This Court held that increasing the corporate contractor's bidding and bonding capacity, using retained earnings to increase its working capital in order to accomplish this result, was a "reasonable need" of its business.

This Court can discern no basic difference between the case at bar and the *Dahlem* case. If it is reasonable for a corporate contractor to retain earnings so as to improve its working capital and thereby increase its bidding and bonding capacity, then it certainly should be reasonable for partners to contribute money or property to the partnership of which they are members for the same purpose. The source of the funds which accomplishes this objective and the circumstances under which those funds are acquired by the business—retained earnings in the *Dahlem* case vis-a-vis capital contributed to a partnership from funds borrowed individually by the partners in the instant case—are not at all material. It is the purpose sought to be accomplished and the reasonableness of it that is the *sine qua non*.

(c) *Statutory Requirements Concerning the Inclusion of Partnership Liabilities in Determining the Adjusted Basis of a Partnership Interest*

There is yet another reason why the plaintiffs are entitled to prevail in the case at bar. All partnership liabilities, not merely the increase in those liabilities during the taxable year in question, must be taken into account in determining the adjusted basis of the respective partner's interest in the partnership of which he is a member.

Section 705 of the Internal Revenue Code of 1954 spells out in detail the method of computing the basis of the interest of a partner in a partnership.

Subsection (a) of that section sets forth an "earnings and profits" formula, the basic approach of which is aggregating the partner's capital contributions and his share of partnership income and reducing the amount so determined by distributions to the partner and his share of partnership losses. 6 Mertens, Law of Federal Income Taxation § 35.44, at 129. The starting point for the application of this formula is the inception of the partnership in the case of an original member of the partnership or the date upon which the partner acquires his interest in the partnership by purchase, gift or inheritance. 33 Am.Jur.2d 482, Federal Taxation ¶ 1651.

To the initial, or "original" [see Reg. § 1.705–1(a) (2)], basis of the partnership interest are added subsequent contributions of money or property at the tax basis thereof, the partner's distributive share of taxable income of the partnership, exempt income and the excess of depletion deductions over the basis of the depletable property "for the taxable year and prior taxable years," and subtracted therefrom are distributions to the partner and his distributive share of partnership losses and non-deductible partnership expenses "for the taxable year and prior taxable years." This earnings and profits formula "involves tracing the partnership activities through every year of its existence." 2 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 16.08, at 1667b.

As mentioned above, subsection (a) of § 705 recognizes that contributions by a partner to the capital of a partnership may be in the form of either money or property. Section 722 specifically provides that "The basis of an interest in a partnership acquired by a contribution of * * * money, to the partnership shall be the amount of such money * * *." Increases and decreases in partnership liabilities are treated the same as either a contribution of money to the capital of a partnership or the withdrawal of money from the capital of a partnership. Section 752(a) provides that "Any increase in a partner's share of the liabilities of a partnership * * * shall be considered as a contribution of money by such partner to the partner-

ship," and subsection (b) of that same section declares that "Any decrease in a partner's share of liabilities of a partnership, * * * shall be considered as a distribution of money to the partner by the partnership."

■ Thus, application of the "earnings and profits" formula requires a determination of the "original" basis of a partner's interest at the time he first became a partner, with annual adjustments thereto being made to reflect earnings and profits, losses, and contributions to and withdrawals from the capital of the partnership up to the point of time the determination of basis becomes material. In making these annual adjustments, a partner's distributive share of annual increases in the liabilities of the partnership are treated the same as if he had contributed the amount thereof in money to the capital of the partnership, and his distributive share of annual decreases in partnership liabilities is considered as though he had withdrawn the amount thereof in money from the capital of that partnership.

■ Congress recognized, however, that it might not be possible to apply the "earnings and profits" formula in determining the basis of a partner's interest if the partnership had operated over a long period of time and had not retained all of its financial records. For this reason it provided in subsection (b) of § 705 an alternative, "balance sheet" method for determining the basis of a partnership interest. Barrett & Seago, Partners and Partnership, Law and Taxation, 661. This "balance sheet" method is designed to achieve, in simplified form, the same result as the "earnings and profits" formula, and under normal circumstances it will do so. 2 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 16.08, at 1667a. Basically, the "balance sheet" approach, or alternative rule, provides that the basis of a partner's interest shall be his capital account as set forth on the books of the partnership increased by his share of

partnership liabilities. Reg. § 1.705–1(b), Example (3). See also J. B. O'Brien ¶62,142 P–H T.C. Memo. (1962), where a partner's basis in a law partnership that apparently had no liabilities was determined by reference to his capital account.

■ In the case at bar both the plaintiff and the defendant used the "balance sheet" method of determining the bases of the partnership interests of Corum and Whittington in their partnership. Internal Revenue Agent Wesley Mabry, who testified for the defendant, started with the negative balances in the capital accounts of each at the beginning of 1962, and so did James M. Amick, the certified public accountant who testified for the plaintiffs. Amick included each partner's distributive share of partnership liabilities at the beginning of that year, as well as his distributive share of increases in partnership liabilities during that year, which had the same effect as including their respective shares of all partnership liabilities at the end of 1962. Mabry, however, included only the increases in the partners' distributive shares of partnership liabilities during the year 1962, notwithstanding the fact that it was clearly and amply proven that the $582,786.08 in partnership liabilities outstanding at the beginning of that year represented the total increase in partnership liabilities throughout the period of its existence.

The Court is of the opinion that Internal Revenue Agent Mabry's approach is at material variance with the requirements of § 705, and that Amick's approach is the correct one. There is no justification for construing the words "any increase in a partner's share of the liabilities of a partnership," as they are used in § 752(a), to mean only the increase during the taxable year in issue. Those words mean any increase in a partner's share of the liabilities of a partnership from the time the partner acquired his interest in the partnership. Cf. M. Pauline Casey, 38 T.C. 357 (1962). Any other construction could not pos-

sibly achieve the objective sought to be accomplished by the application of either the "earnings and profits" formula or the "balance sheet" method of determining partnership basis set forth in § 705.

This conclusion is confirmed by numerous authorities. Example (3) appended to Reg. § 1.705–1(b) clearly shows that a partner's share of all partnership liabilities at the time he sells his partnership interest is to be added to his capital account in determining the basis of his partnership interest. In Rev.Rul. 60–345, Cum.Bull. 1960–2, 211, there were outstanding at the end of the partnership taxable year trade accounts, notes and accrued expenses which had not been recorded on the partnership books, and it was held by the Internal Revenue Service that the partner's share of all these liabilities at the end of the partnership year should be included in the adjusted basis of his interest in the partnership in determining the extent to which his deductible share of the partnership loss for that year was allowable under § 704(d). Furthermore, in 6 Mertens, Law of Federal Income Taxation § 35.48, at 136, it is stated:

> "A partner's basis for his interest in the partnership includes his share of the partnership liabilities."

Further support for this conclusion may be found in Reg. § 1.705–1(a) (4), the last sentence of which reads:

> "In determining the basis of a partnership interest on the effective date of subchapter K, chapter 1 of the Code, or any of the sections thereof, the partner's share of partnership liabilities *on that date* shall be included." [Emphasis supplied.]

The effective date of subchapter K of the 1954 Code is declared by § 771 to be the partnership taxable year beginning after December 31, 1954. In the case of Corum and Company, which was organized in 1951 by Corum and Whittington, this would be the partnership year beginning January 1, 1955. Had the controversy presently before the Court been raised in connection with a partnership loss incurred during the year 1955 rather than 1962, could any one seriously contend that Corum and Whittington's shares of partnership liabilities on January 1, 1955, should not be included in determining the basis of their respective partnership interests at the end of 1955? Obviously not. This regulation specifically says that they should be included, and the Court can see no justification whatever for holding that a different rule should apply simply because the controversy at hand concerns the year 1962.

The Court concludes, as a matter of law, that the total partnership liabilities of Corum and Company at the beginning of 1962, as well as the increase in liabilities of that partnership during 1962, must be included in and added to the capital accounts of Corum and Whittington, one-half to each, in arriving at the adjusted basis of their respective interests in their partnership at the end of that year for the purpose of determining the extent to which their distributive shares of the partnership loss sustained during 1962 may be allowed under § 704(d) of the Internal Revenue Code of 1954. The computation set forth in Finding of Fact 11 includes these liabilities and is correct. The computation set forth in Finding of Fact 10 includes only the increase in partnership liabilities during 1962 and therefore is incorrect.

3. The Court concludes as a matter of law that the plaintiffs are entitled to a refund of the full amount each is claiming in this proceeding.

4. Counsel for the plaintiffs, upon notice, will submit an appropriate judgment in conformity with the findings of fact and conclusions of law expressed herein.