441 F.2d 465
 71-1 USTC P 9352
 Vincent STACKHOUSE and wife, Erma Lee Stackhouse,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
Robert V. WILLIAMS and wife, Rachel Williams, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 30832, 30833 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc
v.
Citizens Casualty Company of New York, et al., 5 Cir. 1970,
431 F.2d 409, Part I.
 
 United States Court of Appeals, Fifth Circuit.
 April 23, 1971.
 Howard H. Hasting, San Antonio, Tex., for plaintiffs-appellants.
 Johnnie M. Walters, Asst. Atty. Gen., Seagal V. Wheatley, U.S. Atty., Dept. of Justice, Washington, D.C. William W. Guild, Dept. of Justice, Fort Worth, Tex., Meyer Rothwacks, Harry Baum, Stephen H. Hutzelman, Attys., Tax Division, Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 These consolidated income tax cases present the single question whether the settlement of a partnership's liability resulting in a decrease of each partner's share of the liabilities of the partnership should be 'considered' as a distribution of money to the partners (the taxpayers). We hold that it should be so considered under 752 of the 1954 Internal Revenue Code. Accordingly, we reverse the district court's holding that taxpayers realized ordinary income from the discharge of their indebtedness, and we remand the case.
 
 I.
 
 2
 The facts are not in dispute. In 1960 the taxpayers Vincent Stackhouse and Robert V. Williams formed a partnership to succeed and carry on the civil engineering business of V. L. Beavers, Engineers, a partnership which had been composed of Beavers, Stackhouse, and Williams. The new partnership-- Williams-Stackhouse & Associates-- assumed all the liabilities of V. L. Beavers, Engineers. Among those liabilities were fees owed to Condos & Rhame under a contract whereby Condos & Rhame furnished operating capital and business advice to V. L. Beavers, Engineers, in return for a percentage of Beavers's business receipts. In addition to assuming that debt, the new partnership entered into a contractual arrangement with Condos & Rhame substantially identical to that of V. L. Beavers, Engineers. On August 8, 1963, however, the taxpayers advised Condos & Rhame that because of its breach of contract they considered Williams-Stackhouse & Associates no longer bound by the contract. On that date the taxpayers owed Condos & Rhame $126,882.86. Condos & Rhame then sued the taxpayers in a Texas state court. On August 31, 1964, the taxpayers settled the entire debt by paying Condos & Rhame $30,000.
 
 
 3
 The Commissioner of Internal Revenue noted the transaction in the taxpayers' 1964 partnership return and concluded that by this settlement the partnership had realized income in the amount of $96,882.86 (the difference between the amount of the debt and the amount of the settlement), which should be divided equally between the taxpayers. Because the partnership had been insolvent before the settlement (that is, its liabilities exceeded its assets), the Commissioner determined that this gain should be recognized to each taxpayer only to the extent of his solvency immediately after the settlement. The parties stipulated that immediately after and as a result of the settlement, the net worth of Williams was $41,582.57 and of Stackhouse, $32,765.67.[1] Accordingly, the Commissioner increased the taxpayers' taxable incomes in these respective amounts, made certain minor adjustments not now in issue, and assessed deficiencies. The taxpayers paid the deficiencies and interest-- Williams, $12,936.47, and Stackhouse, $10,047.43-- and filed the instant suits for refunds.[2]
 
 
 4
 The taxpayers' cases were consolidated for trial. On August 13, 1970, the district court rendered judgment for the United States. In its memorandum opinion the court held that under 61(a)(12) the taxpayers realized gross income from the discharge of their indebtedness to the extent of their solvency. The court rejected the taxpayers' argument that the gain to be recognized to each of them as a result of the settlement should be determined under the provisions of 731(a) governing the distribution of partnership assets to partners. The court said:
 
 
 5
 The plaintiff's reliance upon sec. 731(a) of the Internal Revenue Code, however, is misplaced for that section obviously refers to the distribution of the partnership's assets, or proceeds from the sale or exchange of partnership assets, to a partner. There was no distribution here of any partnership assets to a partner, and there was no sale or exchange of partnership assets with the resulting proceeds being distributed to the partners. There was only a cancellation of a debt which Section 61(a)(12) explicitly designates as income.
 
 
 6
 Contending that the district court erred, the taxpayers have appealed.
 
 II.
 
 7
 In response to the 'confusion' in the existing tax treatment of partners and partnerships-- then reflected in 'inadequate' statutory provisions and 'incomplete and frequently contradictory' regulations, rulings, and court decisions-- Congress, among other undertakings of the 1954 Code, undertook 'the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws.' The result is Subchapter K of the 1954 Internal Revenue Code, 26 U.S.C. 701-771. See H. Rep. on H.R. 8300, U.S.Code Cong. & Admin.News, 83rd Cong., 2d Sess., p. 4091 (1954); S.Rep. on H.R. 8300, U.S.Code Cong. & Admin.News, 83rd Cong., 2d Sess., pp. 4721-4722 (1954).
 
 
 8
 Under Subchapter K a partner's interest in the partnership is itself a capital asset, subject to gain or loss like any other capital asset. The basis of this capital asset is to be determined at any time by the application of the rules in 705. One of the variables entering into the 705 computation of the adjusted basis of this capital asset is the partner's share of the outstanding liabilities of the partnership. See Corum v. United States, W.D.Ky.1967, 268 F.Supp. 109; 6 Mertens, Law of Federal Income Taxation 35.44. According to 752, any decrease in a partner's share of the outstanding liabilities of a partnership, or any decrease in a partner's individual liabilities by the assumption by the partnership of those liabilities, is considered a distribution of money to the partner by the partnership. See Stilwell v. Commissioner, 46 T.C. 247 (1966); 6 Mertens, Law of Federal Income Taxation 35.46.
 
 
 9
 Under other sections of Subchapter K this distribution has two consequences. First, to the extent that the distribution, or decrease of liabilities, exceeds the adjusted basis of the partner's interest in the partnership as it existed immediately before the distribution, the partner has realized a taxable gain. 26 U.S.C. 731. Second, following the distribution and computation of gain, the adjusted basis of the partner's interest in the partnership is reduced by the amount of the distribution. 26 U.S.C. 733.
 
 
 10
 The taxpayers contend that these sections of the Code are applicable to the facts of this case. The taxpayers argue that when they settled their debt with Condos & Rhame the partnership's outstanding liabilities were decreased by the amount of $126,882.86; each partner's share of the liabilities was decreased by the amount of $63,441.43. Under 752, they contend, this reduction of liabilities constitutes a distribution of money by the partnership to the partners. To determine the gain to be recognized to each partner as a result of the settlement, the taxpayers subtract this distribution from the adjusted basis of each partner's interest in the partnership as it existed immediately before the settlement. See 26 U.S.C. 731. The parties stipulated that the adjusted basis of Williams's interest in the partnership immediately before the settlement was $66,412.43; Stackhouse's, $51,412.43. Subtracting these amounts from the amount of the distribution, or reduction of liabilities, the taxpayers conclude that Williams's adjusted basis was not exceeded-- thus he realized no gain from the settlement-- and Stackhouse's adjusted basis was exceeded by $12,029-- which amount he realized as a taxable capital gain.
 
 
 11
 The United States, on the other hand, argues that 61(a)(12) governs the facts of this case. That section of course includes in the gross income of the taxpayer any income from the discharge of an indebtedness. The United States argues that taxpayers realized a total of $96,882 in income from the discharge of their debt to Condos & Rhame (that is, $126,882 less the $30,000 payment), or a total of $48,441 each. The United States concedes, however, that because the partnership had been insolvent before the settlement (its liabilities exceeded its assets), the gain to each partner should be recognized only to the extent of his solvency immediately after the settlement. See Haden Co. v. Commissioner of Internal Revenue, 5 Cir. 1941, 118 F.2d 285, cert. denied, 314 U.S. 622, 62 S.Ct. 73, 86 L.Ed. 500 (1941). The parties stipulated that immediately after and as a result of the settlement the net worth of Williams was $41,582.57 and Stackhouse, $32,765.67. The Commissioner assessed dificiencies based on those respective additions to income.
 
 
 12
 In accordance with its view that 61(a)(12) controls, the United States argues that the partnership provisions of Subchapter K are inapplicable to the facts of this case. In its view those provisions deal solely with the rights and liabilities of the partners among themselves and do not affect the taxpayers' realization of taxable income from the discharge of their indebtedness to a third party. In particular 731 does not apply because there was no distribution of any partnership assets to a partner or sale or exchange of partnership assets with a resulting distribution of the proceeds to the partners.
 
 
 13
 On the surface the argument of the United States that there has been in this case no 'distribution' within the meaning of 752 seems plausible. The statute itself provides merely that
 
 
 14
 any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.
 
 
 15
 26 U.S.C. 752(b). Thus the statute could conceivably be intended to apply only to transactions among partners or between individual partners and the partnership.
 
 
 16
 The legislative history of the 1954 Internal Revenue Code and the Treasury regulations promulgated under 752 make it clear, however, that the statute is intended to have a broader scope. The Senate Report on the bill contains the following discussion of 752:
 
 
 17
 Frequently, a partner will assume partnership liabilities or a partnership will assume a partner's liabilities. In some cases this occurs as the result of a contribution of encumbered property by the partner to a partnership or as the result of a distribution of such property by the partnership to the partner. The provisions of this section prescribe the treatment for such transferred liabilities. Whenever a partner's individual liabilities are increased because of the assumption by him of partnership liabilities, the amount of the increase shall be treated as a contribution of money by the partner to the partnership. Similarly, when the liabilities of the partnership are increased, thereby increasing each partner's share of such liabilities, the amount of the increase shall be treated as a pro rata contribution by the partners, thereby raising the basis of each partner's interest in the amount of his share of the increase.
 
 
 18
 Conversely, when a partner's personal liabilities are decreased because a portion of them have been assumed by the partnership the amount of the decrease shall be treated as a distribution of money by the partnership to the partner. Similarly, when the liabilities of the partnership are decreased, thereby decreasing each partner's share of such liabilities, the amount of the decrease shall be treated as a pro rata distribution by the partnership, thereby reducing the basis of each partner's interest in the amount of his share of the increase.
 
 
 19
 S.Rep. on H.R. 8300, U.S.Code Cong. & Admin.News, 83rd Cong., 2d Sess., p. 5047 (1954); see also H.Rep. on H.R. 8300, U.S.Code Cong. & Admin.News, 83rd Cong., 2d Sess., pp. 4376-4377 (1954).
 
 
 20
 The current Treasury regulations promulgated under 752 also discuss the effect of a reduction of the partnership's liabilities:
 
 
 21
 Where the liabilities of a partnership are decreased, and each partner's share of such liabilities is thereby decreased, the amount of the decrease shall be treated as a distribution of money to the partner by the partnership. For example, partnership AB, in which A and B are equal partners, repays an obligation of $10,000. The repayment reduces each partner's share of partnership liabilities by $5,000 and is considered a distribution of money which reduces the basis of each partner's interest in the partnership by that amount. For the effect of a discharge of indebtedness on the basis of partnership property, see sections 108 and 1017.
 
 
 22
 1 Federal Tax Regulations, U.S.Code Cong. & Admin.News, 1.752-1(b)(1), at 1684 (1971).
 
 
 23
 From these sources we conclude that there was in this case a 'distribution' within the meaning of 752. The legislative history of the Code and the current Treasury regulations make it clear that 752 applies not only to those instances in which one partner assumes the liabilities of another or the partnership itself assumes the liabilities of a partner. It also applies to those situations in which the liabilities of the partnership itself are decreased, thereby decreasing each partner's share of those liabilities. In that case the amount of the decrease is treated as a pro rata distribution of money to each partner by the partnership. The liabilities of the partnership of course could be decreased in a number of ways: an individual partner could assume certain partnership liabilities, or the partnership could repay an outstanding obligation. See 1 Federal Tax Regulations, U.S.Code Cong. & Admin.News, 1.752-1 (1971). But a reduction of liabilities would also occur if a partnership obligation were forgiven, or as here discharged for a lesser amount than the total due.
 
 
 24
 Since we have found in this case a 752 distribution, it necessarily follows that the gain to be recognized to the taxpayers from the settlement should have been calculated in accordance with the terms of 731(a). This is because 731 'sets forth the rules for the recognition of gain or loss upon distributions of money and property by the partnership to a partner.' S.Rep. on H.R. 8300, U.S.Code Cong. & Admin.News, 83rd Cong., 2d Sess., p. 5031 (1954). The section is applicable to both current distributions and distributions in liquidation of a partner's entire interest in the partnership. Id.; see also 1 Federal Tax Regulations, U.S. Code Cong. & Admin.News, 1.731-1(a)(1), at 1654 (1971). Moreover, we find no language in 61(a)(12) that necessarily forbids the application of 731(a) to the facts of this case. Section 731(a) merely prescribes the rules for determining the amount of income derived from this discharge of indebtedness to be included in the taxpayers' gross income under 61(a)(12). In a sense then we are giving effect to both sections of the Code.[3]
 
 
 25
 Because we conclude that the district court erred in ruling 731 inapplicable to the facts of this case, we must reverse its judgment and remand the case for a recomputation of the taxes owed by the taxpayers for the year 1954 by reason of their settlement with Condos & Rhame. We note that Williams and Stackhouse have already paid deficiencies in the respective amounts of $12,936.47 and $10,047.43. After re-computing the taxes actually owed, giving effect to the provisions of 752 and 731, and comparing those amounts with the amounts already paid, the district court should render judgment for the taxpayers for the difference.
 
 
 26
 Reversed and remanded.
 
 
 
 [1]
 In determining the solvency of the individual partners immediately after the settlement, the Commissioner ditermined that the partnership had been rendered solvent by this transaction in the amount of $8,854.07, that immediately after this settlement, Williams' capital account showed a positive balance of $11,927.04, while Stackhouse's capital account showed a negative balance of $3,072.97, that Williams' interest in the partnership should be valued at $11,927.04, and Stackhouse's interest should be considered as a debt of $3,072.97 which he owed to the partnership. To these values of their interest in the partnership, the Commissioner added each partner's share of the good will of the firm, which the Commissioner appraised, as well as the value of all other property which each partner owned individually, which property the commissioner also appraised, and determined the net worth of Williams after the settlement to be $41,582.57, and that of Stackhouse to be $32,765.67
 
 
 [2]
 The taxpayers' wives, Rachel Williams and Erma Lee Stackhouse, are also parties to the instant refund suits. They were joined in these suits, however, solely because they signed joint returns with their husbands for the year in question
 
 
 [3]
 It is worth pointing out that the gain to be recognized at this time to each of the taxpayers, in accordance with the rules of 731, is not the only tax consequence of their settlement with condos & Rhame. After the distribution and computation of gain, the adjusted basis of each partner's interest in the partnership must be reduced by the amount of the distribution. See 26 U.S.C. 733. In this manner Stackhouse's adjusted basis will be reduced to zero and Williams's, to $2,971. Upon their eventual liquidation of the partnership and distribution of the assets, the taxpayers will undoubtedly realize further gain by reason of this consequence of the settlement. That gain will be recognized at that time