**Welles MURPHEY, Jr., et al., Plaintiffs,**

v.

**HILLWOOD VILLA ASSOCIATES et al., Defendants.**

**No. 75 Civ. 2053 (WCC).**

United States District Court, S. D. New York.

Jan. 21, 1976.

John M. Burns, III, New York City, for plaintiffs.

Trubin Sillcocks Edelman & Knapp, New York City, for defendants Hillwood and Karr.

## MEMORANDUM AND ORDER

CONNER, District Judge:

In April 1972, defendants Karr and Gaines entered into an agreement with plaintiffs to form defendant Hillwood Villa Associates (Hillwood), which was organized as a limited partnership under the laws of Tennessee, with Karr and Gaines as general partners and plaintiffs as limited partners. The primary purpose of the partnership was to construct, own and operate a rental housing project in Nashville, Tennessee, under the provisions of Section 221(d)(4) of the National Housing Act.

The Limited Partnership Agreement (the Agreement), executed in Tennessee by Karr and plaintiffs' attorney-in-fact, Arnold Goldstein, obligated plaintiffs to make capital contributions to Hillwood in the aggregate amount of $198,000 plus interest, $50,000 to be paid in cash immediately and the balance to be represented by a series of non-negotiable promissory notes due on January 31 of each of the years 1973 through 1976. The Agreement provided that, upon default by a limited partner in the payment of his particular obligations, the remaining limited partners would have the "First Option" to purchase the defaulting partner's interest, exercisable within thirty days after receipt of notice from the general partners of the default. A failure to exercise such option would give the general partners a "Second Option" to sell the defaulting limited partner's interest, subject to any required approval of the Federal Housing Administration. If neither of these two options was exercised, the Agreement stipulated that the general partners "shall be deemed to be the assignees" of the defaulting limited partner's interest in the partnership.

Although the record is not entirely clear, it appears that plaintiffs made the initial cash contribution of $50,000, and subsequently paid the amounts due on the promissory notes maturing on January 31, 1973 and January 31, 1974. These payments were apparently made in the manner prescribed by the Agreement, which required that all checks be made payable directly to the partnership. Prior to the January 31, 1975 maturity date of the third set of promissory notes, however, Gaines, purporting to act on Hillwood's behalf, mailed to the law firm of Conrad & Smith in New York City, which was designated "Counsel for the Partnership" by the Agreement, an "irrevocable assignment" transferring Hillwood's right to receive $8,500 of the total amount due from the limited partners under the soon-to-mature promissory notes to various assignees, who had supposedly rendered services to Hillwood. The assignment directed Conrad & Smith, upon receiving the limited partners' respective contributions, to pay the assigned $8,500 directly to the assignees and to forward the balance to Hillwood.

On February 5, 1975, Goldstein, who was a member of Conrad & Smith, mailed the limited partners' checks in accordance with Gaines' directive. In mid-February, however, Karr sent letters to all of the plaintiffs, advising them that their installment obligations due January 31, 1975 had not been paid. Goldstein, having received copies of these letters, notified Karr by mail that the payments had in fact been made, but did not mention the assignment executed by Gaines. On February 24, 1975, Karr sent plaintiffs yet another letter, advising them of their dereliction in failing to pay the amounts due. Copies were again mailed to Conrad & Smith and were received by Goldstein. Finally, on April 17, 1975, no further correspondence from plaintiffs or Goldstein having been received, and the time for exercise of the two options specified in the Agreement having expired, Karr notified plaintiffs that their interests in Hillwood had been forfeited and assigned to him.

Plaintiffs then instituted the present action, seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that they have met all of their obligations under the Agreement, that they remain limited partners of Hillwood, and that their partnership interests have not been assigned to Karr, and additionally seeking $300,000 punitive damages plus reasonable costs and attorneys' fees. The complaint alleges both federal and non-federal grounds for relief. Plaintiffs claim that defendants' conduct constitutes a "device, scheme, or artifice to defraud" in violation of both Section 17(a) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. Jurisdiction over that claim is allegedly based on Section 22 of the 1933 Act, 15 U.S.C. § 77v, and Section 27 of the 1934 Act, 15 U.S.C. § 78aa. Plaintiffs additionally claim that divestiture of their limited partnership interests constitutes an unlawful forfeiture at common law. Subject matter jurisdiction over this claim is based upon diversity of citizenship, 28 U.S.C. § 1332(a)(1).

Defendants have now moved for an order, pursuant to Rule 12(b), F.R.Civ.P., dismissing the complaint for failure to state a claim for relief under the federal securities laws, for lack of personal jurisdiction over defendants, and for improper venue, or, alternatively, for an order, pursuant to 28 U.S.C. § 1404, transferring this action to the United States District Court for the Middle District of Tennessee.

First, defendants contend that, even assuming the validity of plaintiffs' substantive allegations and their assertion that their limited partnership interests were "investment contracts," and thus securities within the meaning of Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), no action under Section 10(b) and Rule 10b–5 can be maintained, since the alleged fraudulent scheme was not "in connection with the purchase or sale" of the limited partnership interests. They argue that plaintiffs merely allege "a disagreement between the parties relating to performance of an agreement."

Next, defendants reason that, since plaintiffs' securities violation claim is baseless and subject to dismissal, their claim of unlawful forfeiture must also be dismissed for lack of *in personam* jurisdiction. Although conceding subject matter jurisdiction on the basis of diversity, defendants contend in essence that they are not subject to the exercise of New York State's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), and that service of extraterritorial process upon them was thus ineffective. In addition, defendants argue that, even if *in personam* jurisdiction exists under section 302, venue is improperly laid in this Court, requiring dismissal of the complaint or at least transfer of the action pursuant to 28 U.S.C. § 1404. In support of this argument, they point out that, under 28 U.S.C. § 1391(a), civil actions based on diversity may be "brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Since, in the instant case, all of defend-

**290**

ants reside in the Middle District of Tennessee and plaintiffs reside in New Jersey, Connecticut and New York, the only possible basis for venue in this district is that the claim arose here. Defendants contend that the present claim arose in Tennessee, and not in the Southern District of New York. Finally, defendants assert, in the alternative, that this action should be transferred to the Middle District of Tennessee "in the interest of justice."

Defendants' motions thus raise the following issues, each of which will be considered below:

I. Do plaintiffs state a cause of action under the federal securities laws?

II. Does this Court have *in personam* jurisdiction over defendants?

III. Is venue properly laid in this District?

IV. Should this action be transferred to the Middle District of Tennessee?

### I.

■ Where an action is brought under the federal securities laws, the violation alleged must, of course, involve a "security." The term "security" is defined in Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), to include an "investment contract."

■ The term "investment contract," itself the subject of much judicial discussion, has been interpreted to mean "an investment of money in a common enterprise with profits to come solely from the efforts of others." *Securities and Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244, 1251 (1946). Although recently there has been some erosion of the requirement that profits must derive "solely" from the efforts of others, see *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *cf. United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621, 43

U.S.L.W. 4742 (1975), the strictness of such requirement is not in issue here. Plaintiffs are clearly passive investors in an enterprise which, by agreement, has been managed wholly by defendants Karr and Gaines as general partners. As such, their interests in Hillwood constitute investment contracts and are therefore "securities" within the meaning of the 1933 and 1934 Acts. See *New York Stock Exchange, Inc. v. Sloan*, 394 F.Supp. 1303 (S.D.N.Y.1975).

To maintain an action for a violation of Rule 10b–5, however, plaintiff must allege, *inter alia*, that the defendants' fraudulent conduct occurred "in connection with the purchase or sale" of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, 43 U.S.L.W. 4707 (1975). Defendants argue that, since plaintiffs do not allege the occurrence of any fraud until some three years after they purchased their limited partnership interests, the Rule 10b–5 claim must fail.

If plaintiffs were indeed claiming satisfaction of the purchaser/seller requirement by reference to their initial contract to purchase limited partnership interests in Hillwood, their claim under the securities laws would be dismissed out of hand. There is no allegation of fraud relating to plaintiffs' decisions to invest; defendants' alleged fraud in divesting plaintiffs of their interests is far removed from possible inducements offered at the time of contract. Thus, any attempt by plaintiffs to establish their claim through such a connection would fall short of the "logical nexus" required by Section 10(b) of the 1934 Act. *Cf. Securities and Exchange Commission v. Texas Gulf Sulfur Co.*, 401 F.2d 833 (2d Cir. 1968) *(en banc), cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540 (2d Cir. 1967).

Plaintiffs do not, however, seek to draw a connection between the fraud alleged and the execution of the Agreement. Rather, they argue that the Agreement, by its terms, "provides for the disposition of plaintiffs' limited part-

nership interests upon the occurrence of certain events," namely the default by a limited partner on his obligation to contribute funds and the failure of the remaining limited partners and the general partners to exercise their respective options. Plaintiffs reason that such disposition is itself a "purchase or sale" within the meaning of Section 10(b) and Rule 10b–5. They refer to Sections 3(a)(13) and (14) of the 1934 Act, which define the terms "purchase" and "sale" as follows:

"Section 3(a)(13). The terms 'buy' and 'purchase' each include any contract to buy, purchase, *or otherwise acquire* (emphasis supplied)."

"Section 3(a)(14). The terms 'sale' and 'sell' each include any contract to sell *or otherwise dispose of*" (emphasis supplied).

Under plaintiffs' theory, the provisions in the Agreement for the assignment of their limited partnership interests constitute "precisely the type of contract referred to" in the above definitions, and therefore the alleged fraudulent procurement of such assignment falls within the ambit of Section 10(b). The fraud alleged by plaintiffs is that defendants wrongfully induced them to depart from the manner of payment of their financial obligations prescribed by the Agreement, precipitating a technical default on their promissory notes and enabling defendants to invoke the forfeiture provisions of the Agreement. Thus, plaintiffs urge that they be deemed "sellers," and that defendants be considered "purchasers," under the rule enunciated in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), and recently confirmed by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores, supra.*

Plaintiffs offer no authority for their proposition, and my research has disclosed no case directly on point. However, there is a line of decisions that deal with a somewhat analogous fact situation, and that provide guidance as to the validity of plaintiffs' rationale.

In *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), the plaintiff had brought an action under Section 10(b) and Rule 10b–5, claiming that the defendant had engaged in a fraudulent scheme to acquire a sufficient percentage of the stock of Crown Finance Company, of which the plaintiff was a shareholder, to enable it, under state law, to effect a "short form" merger without the approval of Crown shareholders. Although the plaintiff had not sold his shares pursuant to Beneficial's fraudulent tender offer to his class of shareholders, the Second Circuit held that he had standing to maintain his action as an individual "seller."

The court focused upon the effect of the short form merger on the plaintiff's rights as a shareholder. It recognized that, since Crown was no longer a viable corporate entity, the plaintiff's retention of his shares was no longer feasible and his sole option was to exchange his shares for cash. The court asserted that, in view of the non-limiting definition of the term "sale" provided by Section 3(a)(14) of the 1934 Act, a "seller," for purposes of standing to sue under Section 10(b) and Rule 10b–5, must be deemed to include a "forced seller" such as the plaintiff.

Having determined that the plaintiff held the status of a seller, the court confronted the defendant's contention that such status was not "in connection with" the deception, which occurred at the time of the earlier stock acquisition from those shareholders who had tendered their shares. The court interpreted this argument as an assertion "that reliance is a requirement in a Rule 10b–5 action." It replied that reliance was

"unnecessary * * * when no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer. Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff

on the claimed deception need not be shown." 374 F.2d at 635.

Thus, the Second Circuit determined that the effect of the fraudulent activity in securing the desired short form merger, which in turn resulted in the plaintiff's being stripped of his right to retain his stock, had a sufficient causal connection to the plaintiff's status as a seller to satisfy the "in connection with" language of Section 10(b) and Rule 10b–5.

The "forced seller" principle established in *Vine* has been applied in other cases to give standing to plaintiffs suing under Section 10(b), where such standing would be otherwise unavailable under stricter interpretations of the purchaser/seller requirement. Thus, seller status has been accorded a corporate plaintiff claiming fraud in the merger of a corporation in which it held substantial stock in another (merging) corporation, where the effect of such merger was the distribution by the merging corporation of its shares to the plaintiff in exchange for the latter's previously held shares and its accompanying threat to bring a divestiture action under the antitrust laws unless the plaintiff sold such shares. *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787 (2d Cir. 1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

In *Coffee v. Permian Corp.*, 434 F.2d 383 (5th Cir. 1970), the individual plaintiff, alleging fraud in the liquidation of the corporation in which he was a minority shareholder by the corporation which held its controlling shares, was likewise deemed to have standing to sue under Section 10(b) and Rule 10b–5 as a "forced seller." See also *Dudley v. Southeastern Factor & Finance Corp.*, 446 F.2d 303 (5th Cir.), *cert. denied*, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 109 (1971); *Fidelis Corp. v. Litton Industries*, 293 F.Supp. 164 (S.D.N.Y.1968).

The common thread running through these cases is the fraudulent transformation of a securityholder's investment from an interest in a going enterprise into a right solely to receive payment in exchange for such interest. In each case, the alleged fraud induced no volitional act on the part of the plaintiff and only indirectly forced the disposition of his interest. However, the effect was deemed in each instance to have a sufficient nexus with the fraud to fall within the purview of Section 10(b).

Two differences between the cases mentioned above and the present case are readily discernible: (1) here, defendants' alleged fraud induced plaintiffs to do a volitional act—making an installment payment contrary to the express terms of the Limited Partnership Agreement, and (2) the disposition of plaintiffs' investment interests by forfeiture was not a conventional "sale" whereby plaintiffs received consideration therefor.

With regard to the first difference, plaintiffs' affirmative response to defendants' conduct merely strengthens the causal connection between the alleged fraud and the ultimate disposition of the limited partnership interests. There is thus no need, as in the "forced sale" cases, to rely solely upon the indirect consequences of defendants' behavior to satisfy the "in connection with" language of Section 10(b). Here, the direct result of defendants' directive was plaintiffs' technical breach of the Agreement, which activated its forfeiture provisions. The second difference presents somewhat greater difficulty, however. Critical to the forced sale situation is the fact that, as a result of the fraud, the interest of the securityholder has been transferred for consideration; it is precisely because there is an actual sale that he is accorded the status of a "seller" for purposes of Section 10(b). In the present case, plaintiffs have not sold and are in no position to sell their limited partnership interests. Instead, they were stripped of those interests without remuneration.

It is true that in order to sustain the analogy with the forced sale situation, the forfeiture must qualify as a "sale" within the meaning of Section 10(b) and Rule 10b–5. However, as noted above, Section 3(a)(14) of the 1934 Act defines

the sale of a security to include any "contract to * * * dispose of" such security. Certainly a forfeiture is the most extreme form of forced disposition.[1] And, although it lacks the readily discernible *quid pro quo* of a conventional sale, it is incident to the exchange of mutual promises, constituting a remedy of one party for a breach by the other.

In the Agreement, plaintiffs expressly contracted to forfeit their limited partnership interests upon their failure to fulfill their financial obligations. There was thus a "contract to * * * dispose of" a security. That the contract provided, in specified circumstances, for a disposition that was wholly passive on the part of plaintiffs and without further compensation to them does not make it any less a contract to dispose. Indeed, our own Court of Appeals has recognized that, under appropriate circumstances, consideration need not be the *sine qua non* of a "sale" under Rule 10b–5. *International Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). Accordingly, I conclude that a forfeiture is a type of disposition contemplated as a sale under Section 10(b) of the 1934 Act and therefore that plaintiffs' claim under the securities laws should not be dismissed.

## II and III.

Defendants' contention that this Court lacks personal jurisdiction over them rests on—and falls with—their assumption that plaintiffs' securities fraud claim warrants dismissal. Under Section 27 of the 1934 Act, 15 U.S.C. § 78aa, in an action under Section 10(b) and Rule 10b–5, process may be served "wherever the defendant may be found." Plaintiffs' service of process in Tennessee pursuant to Rule 4(e), F.R.Civ.P., is not claimed to have been improper and was thus effective to give the Court personal jurisdiction over defendants. Moreover, I conclude, on the basis of precedent in this Circuit, that such service is also effective with respect to plaintiffs' state law claims, grounded as they are upon the identical facts on which plaintiffs' federal claim is founded. See *Schwartz v. Eaton,* 264 F.2d 195 (2d Cir. 1959); *Cooper v. North Jersey Trust Co.,* 226 F.Supp. 972, 980–82 (S.D.N.Y.1964). See also C. Wright, Federal Courts § 9 at 21 (2d ed. 1970).

Section 27 also sets forth the proper venue for an action under the securities laws, stating that such action "may be brought in the district wherein any act or transaction constituting the violation occurred." There is little doubt that the acts that defendants are alleged to have committed in this District are sufficient to satisfy that requirement. Venue is thus properly laid in this District.

## IV.

Finally, defendants argue that, assuming *arguendo* that all of their other contentions fail, this action should be transferred to the Middle District of Tennessee, pursuant to 28 U.S.C. § 1404(a). This argument merits attention if only to show that it has not been overlooked. As the Supreme Court stated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947), "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Defendants have in no way demonstrated that their interests substantially outweigh those of plaintiffs.

In view of the foregoing, defendants' motion to dismiss or to transfer is denied.

SO ORDERED.

---

1. Indeed, several Courts, including this one, have ruled that a pledgor of securities later sold pursuant to foreclosure has standing as a "seller" under the securities acts. For an analysis of those precedents, the reader is referred to *Dopp v. Franklin National Bank,* 374 F.Supp. 904, 907–09 (S.D.N.Y.1974).