564 F.2d 11
 77-2 USTC P 9700
 Allen BREISBLATT, Paula Breisblatt, Thomas A. Olsen, Debra
F. Olsen, Jambert W. Holst, Dorothy Mobley,
Richard A. Hlavenka, Judith Hlavenka,
Thornton McCoy and Edna McCoy,
Plaintiffs-Appellants,
v.
BAKER-FIRESTONE, INC. and Edwin J. Geher, Defendants-Appellees.
 No. 48, Docket 77-7181.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 16, 1977.
Decided Oct. 17, 1977.
 
 Walter S. Jennings, New York City, Edelman & Jennings, New York City, for plaintiffs-appellants.
 Robert O. Goldstein, D'Andrea & Goldstein, Mount Vernon, N. Y., for defendants-appellees.
 Before GURFEIN and VAN GRAAFEILAND, Circuit Judges, and COFFRIN, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is an appeal from a judgment dismissing plaintiffs' claims for treble damages based upon defendant's alleged violations of the Tax Reduction Act of 1975. Jurisdiction is conferred by Section 208 of the Act. The case was tried without a jury, on stipulated facts, in the United States District Court for the Southern District of New York.
 
 
 2
 Between November 1974 and February 1975, the plaintiffs signed contracts to purchase condominium units from the defendant. The sales were closed in June of 1975. In April 1975, defendant offered similar units in the same development to the public under different terms. Under the new offer, defendant promised to pay one year's carrying charges for any purchaser of a condominium unit in the project. The plaintiffs, of course, were not entitled to the abatement because they had already contracted to purchase their units.
 
 
 3
 At closing, defendant provided each plaintiff with a signed certification dated that day, stating that "this residence has never been offered for sale . . . at a lower purchase price" than the price at which the particular plaintiff purchased. The purpose of the certifications was to permit the purchasers to take advantage of the 5% tax credit available to home buyers under Section 44 of the Internal Revenue Code. I.R.C. § 44, 26 U.S.C. § 44.[1] Plaintiffs contend that the certifications were false and that consequently they are entitled to the civil penalty provided by Section 208(b) of the Tax Reduction Act of 1975, Pub.L. No. 94-12, § 208(b), 89 Stat. 35 (1975).[2]
 
 
 4
 In order to evaluate plaintiffs' contention, it is necessary to understand the purpose of Section 44 which was added to the Code as part of the Tax Reduction Act of 1975. The section provides a 5% tax credit to taxpayers who purchase a new home for use as their principal residence. This was intended to provide a shot in the arm for the then ailing housing industry by encouraging taxpayers to purchase available homes, thereby freeing the capital of builders and developers for new housing starts. S.Rep. No. 36, 94th Cong., 1st Sess. 11-12, reprinted in (1975) U.S.Code Cong. & Admin.News pp. 54, 64. Congress intended that the purchaser, not the vendor, would get the direct benefit of the tax credit. To this end, the purchaser was required to obtain a certification from the vendor stating that the vendor had not offered the residence for sale at a lower price in the past. I.R.C. § 44(e)(4)(B), 26 U.S.C. § 44(e)(4)(B). This was to prevent the vendor from boosting the price in reliance upon the 5% tax credit, thus receiving the tax benefit himself.[3] 121 Cong.Rec. 8861 (1975) (remarks of Sen. Long); id. at 8923 (remarks of Sen. Vanik).
 
 
 5
 To insure that the certifications given by the vendor were truthful, Congress created in § 208(b) a private cause of action in favor of the purchaser. In case of a false certification, § 208(b) entitles the purchaser to sue in federal court for triple the difference between the amount he paid for the home and the lesser amount at which the seller previously offered the residence. Plaintiffs' suit under this section rests upon their contention that defendant's offer to sell units equivalent to the ones they purchased, with an abatement of one year's carrying charges, made his certifications false.[4] In making this contention, plaintiffs rely upon Treas.Reg. § 1.44-3(c)(3)(ii) (1975) which provides:
 
 
 6
 In the case of a condominium or cooperative housing development where units are offered for sale on the basis of models (e. g., all Model C two-bedroom apartments sell at a specified base price), an offer to sell a specified residence includes an offer to sell a specific type of unit. . . .
 
 
 7
 Plaintiffs assert that, because defendant's offer to sell other units of a specific type was made before they were given their certifications at closing, defendant's averment that their residences had "never been offered for sale . . . at a lower purchase price" was false.
 
 
 8
 Plaintiffs' argument is persuasive only if Congressional intent is ignored. The purpose of the certification requirement was to prevent sellers from inflating their prices to take advantage of the tax credit; it was not intended to prevent them from lowering their prices in response to adverse market conditions. With respect to the sale of condominiums, Congress must have intended, therefore, that the date of sale, for purposes of § 208(b), would be the date on which the contract of sale was executed, not the date of closing.[5] If any other interpretation of § 208(b) were adopted, a condominium developer who found the market for his units to be sluggish would be prevented from lowering the price of unsold units without first closing the sales of all the units already under contract.
 
 
 9
 The district court correctly held that Congress did not intend that "after contracts had been signed for the purchase of certain units in a development, the prices of the other units would be frozen and that the seller would be penalized for reducing prices in response to market forces." Finding no indication that defendant's April 1975 offer was anything other than a bona fide response to market conditions, he found no violation of § 208(b).
 
 
 10
 We affirm.
 
 
 
 *
 Of the District of Vermont, sitting by designation
 
 
 [1]
 Section 44 provides in part:
 (a) General rule In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer.
 
 
 [2]
 Section 208 is not codified in the Internal Revenue Code. Section 208(b) provides:
 (b) SUITS TO RECOVER AMOUNTS OF PRICE INCREASES. If
 (1) any person certifies under section 44(e)(4) of the Internal Revenue Code of 1954 that the price for which a residence was sold is the lowest price at which the residence was ever offered for sale, and
 (2) the price for which the residence was sold exceeded the lowest price at which the residence was ever offered for sale,
 such person shall be liable to the purchaser of such residence in an amount equal to three times the amount of such excess. The United States district courts shall have jurisdiction of suits to recover such amounts without regard to any other provision of law. In any suit brought under this subsection in which judgment is entered for the purchaser, he shall also be entitled to recover a reasonable attorney's fee.
 Tax Reduction Act of 1975, Pub.L. No. 94-12, § 208(b), 89 Stat. 35 (1975).
 
 
 [3]
 For example, if a unit is being offered for sale at $39,000, the developer is prohibited from raising the price to $40,000 and informing the buyer that the buyer's effective purchase price is only $38,000 because of a $2,000 tax credit
 
 
 [4]
 The parties agree that the sale of a condominium unit with an abatement of carrying charges is a sale at a "lower price" than a sale without the abatement
 
 
 [5]
 The words "sale" and "contract of sale" are often used interchangeably in the law. See, e. g., Corn Products Refining Co. v. Benson, 232 F.2d 554, 562 (2d Cir. 1956); Murphey v. Hillwood Villa Associates, 411 F.Supp. 287, 293 (S.D.N.Y.1976)