CHESTER L. AND BEVERLY G. MORRIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8689–78.    Filed November 19, 1979.

*Louis F. McDonald*, for the petitioners.
*John P. Tyler*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1975 in the amount of $1,713, as set forth in his statutory notice of deficiency dated July 12, 1978. The issue presented for our decision is whether the construction of petitioners' new residence was commenced before March 26, 1975, thereby entitling petitioners to a credit under section 44.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, and the exhibits thereto, are incorporated herein by this reference.

Petitioners Chester L. and Beverly G. Morris resided at 8952 Saddlewood Drive, Jonesboro, Ga., in the residence in question, when the petition herein was filed. They timely filed a joint Federal income tax return for the year 1975 with the Internal Revenue Service Center, Chamblee, Ga.

On February 27, 1975, petitioners executed a standard sales contract with Four Oaks Properties, Inc. (Four Oaks), for the purchase of a residence to be built on lot 22–B of Unit One of the Country Lane South Subdivision in Jonesboro. A second contract, superseding the first, was executed by petitioners with Four Oaks on March 21, 1975, for a residence to be built on lot 18–C of the same subdivision, later known as 8952 Saddlewood Drive.

M & W Grading & Hauling (M & W) cleared and graded lots

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the time in question, unless otherwise noted.

for Four Oaks in the subdivision in question. Because of tornadoes and heavy rains[2] in the area on Monday, March 24, 1975, however, M & W could not clear or grade lot 18-C before April 9, 1975. Sometime after April 9, M & W cleared lot 18-C in and around four stakes which had been driven in the otherwise untouched lot to designate the positioning of the house. In accordance with its usual practice of always billing the previous 7 days' work each Wednesday, M & W billed Four Oaks for clearing lot 18-C on April 16, 1975. Footings for the foundation were dug after the lot was cleared.

Petitioners filed their Federal income tax return for the year 1975, claiming a credit under section 44 for the purchase of a new residence. A certificate from Four Oaks stating that construction had begun before March 26, 1975, was attached to the return as required by the statute.[3] Petitioners' case is founded upon that certificate from Four Oaks which, as late as June 1975, was advertising uncleared lots for sale as qualified for the section 44 credit. Petitioners claim[4] that they relied upon the expertise of the builder to inform them and certify when construction was begun on the residence in question. Further, petitioners contend that the existence of the certificate stating that construction was begun prior to March 26, 1975, shifts the burden of proof to the respondent.

To the contrary, respondent contends that petitioner has not shown that construction was begun prior to March 26, 1975, and

---

[2] In the 24-hour period preceding 7 a.m., Mar. 25, 1975, the Atlanta metropolitan area received 1.48 inches of rain.

[3] SEC. 44. PURCHASE OF NEW PRINCIPAL RESIDENCE.

(e) PROPERTY TO WHICH SECTION APPLIES.—

\* \* \* \* \* \* \*

(4) CERTIFICATION MUST BE ATTACHED TO RETURN.—This section does not apply to any residence (other than a residence constructed by the taxpayer) unless there is attached to the return of tax on which the credit is claimed a written certification (which may be in any form) signed by the seller of such residence that—

(A) construction of the residence began before March 26, 1975, and

(B) the purchase price of the residence is the lowest price at which the residence was offered for sale after February 28, 1975.

For purposes of this paragraph, a written certification filed by a taxpayer is sufficient whether or not it is on a form prescribed by the Secretary so long as such certification is signed by the seller and contains the information required under this paragraph.

[4] Petitioners' position in this case is derived from their petition and their opening statement at trial. No briefs by or on behalf of petitioners were filed prior to the extended deadlines for briefs and reply briefs, and petitioners did not produce any witnesses or any evidence other than the stipulation of facts.

denies that the burden of proof has been shifted from petitioners by the existence of the certificate.

OPINION

Section 44 provides for a credit against an individual taxpayer's Federal income taxes for the purchase of a new residence, construction of which began before March 26, 1975.[5] In claiming the credit on his return, a taxpayer must attach a certificate of qualifying date of construction and price of the house (see n. 3 *supra*). The decision in this case turns upon the effect of that certificate.

Petitioners attached to their 1975 return a certificate which was received from Four Oaks, and which, if correct, would clearly qualify petitioners for the credit under section 44. Respondent has introduced evidence and reliable testimony showing that the certificate is not correct. Petitioners did not produce any other evidence or witnesses.

Generally, the burden of proof rests with petitioner, except as otherwise provided by statute or as determined by the Court or its rules. Rule 142, Tax Court Rules of Practice and Procedure. Section 44(e)(4) is not one of those statutory exceptions. There is no express language in section 534, 7427, or 7454, nor is there any language in the legislative history of section 44(e)(4) suggesting that Congress intended such a shift of the burden of proof to occur upon presentation of the required certificate.[6]

Since the burden of proof is not shifted to respondent, it

---

[5]SEC. 44. PURCHASE OF NEW PRINCIPAL RESIDENCE.

(a) GENERAL RULE.—In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer.

\*     \*     \*     \*     \*     \*     \*

(e) PROPERTY TO WHICH SECTION APPLIES.—

    (1) IN GENERAL.—The provisions of this section apply to a new principal residence—

      (A) the construction of which began before March 26, 1975,

      (B) which is acquired and occupied by the taxpayer after March 12, 1975, and before January 1, 1977, and

      (C) if not constructed by the taxpayer, which was acquired by the taxpayer under a binding contract entered into by the taxpayer before January 1, 1976.

[6]S. Rept. 36, 94th Cong., 1st Sess. (1975), 1975–1 C.B. 590, 605–606; Conf. Rept. 328, 94th Cong., 1st Sess. (1975), 1975–2 C.B. 523, 525. In fact, the requirement of date certiftcation is only mentioned in the statute and *one* sentence of the Conference Report. Certification of the price of the residence, and no other facts, was the originally proposed requirement of sec. 44(e)(4). By making provisions for treble damages to the purchaser for the seller's false certification of the price, Congress showed that the required certificate of price would not be acceptable as presumptively and conclusively correct. Sec. 208(b), Tax Reduction Act of 1975, Pub. L. 94–12, 89 Stat. 35. Certification of the date, almost an

remains with the petitioners. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Having introduced no supporting evidence or testimony other than the certificate of qualification, which respondent has shown to be of dubious value at most, we hold that petitioners have failed to carry their burden.

M & W did not clear lot 18–C until after April 9, 1975. It was not until after the lot was cleared that footings for the foundation were dug. We do not need to decide here whether construction is commenced upon the clearing of the lot or upon the digging of the foundation, since both of these acts occurred well after March 26, 1975.[7] Sec. 44(e)(1)(A). The only other act performed on the lot was the marking of the location of the house. While this activity may have occurred prior to March 26, 1975, we are certain that the driving of four stakes in the ground does not constitute the commencement of construction contemplated within section 44. S. Rept. 36, 94th Cong., 1st Sess. (1975), 1975–1 C.B. 590, 605–606; *Reddy v. United States*, 436 F. Supp. 377 (N.D. Ill. 1977).

We are well aware of the representations made by the certificate from Four Oaks. However, those representations, without more, cannot entitle petitioners to the credit where the facts show that the certificate is incorrect.[8] Section 44 must be applied according to all the facts of the case, not just the written representations of Four Oaks. The record shows that construction was not begun on petitioners' residence on lot 18–C, at 8952 Saddlewood Drive, before March 26, 1975. Therefore, petitioners are not entitled to a credit. Sec. 44(e)(1)(A); sec. 1.44–3(f), Income Tax Regs. Reliance on the seller's representations by which petitioners claim to have been misled is not sufficient.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

afterthought, should not be given more weight than certification of the price which was the original motivation for sec. 44(e)(4).

[7]Such a distinction was made in *Reddy v. United States*, 436 F. Supp. 377 (N.D. Ill. 1977), where the validity of the guidelines in sec. 1.44–2(a)(1)(i), Income Tax Regs., was upheld.

[8]Compare *Roberts v. Commissioner*, 62 T.C. 834, 839 (1974); *Halle v. Commissioner*, 7 T.C. 245, 249–250 (1946) (sworn statement of petitioner that his tax return is correct does not satisfy his burden of proof and need not be accepted as accurate by the Commissioner where other information shows to the contrary).