PAUL A. GRUBBS AND BRENDA S. GRUBBS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grubbs v. Commissioner
Docket No. 11772-78.
United States Tax Court
T.C. Memo 1980-250; 1980 Tax Ct. Memo LEXIS 334; 40 T.C.M. (CCH) 655; T.C.M. (RIA) 80250; July 15, 1980, Filed *334 Held: Petitioners have not proven that original use of a condominium unit commenced with them for purposes of the credit under section 44 for purchase of a new principal residence. Paul A. Grubbs, pro se. Gary A. Benford, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income *336 tax against petitioners for 1975 in the amount of $2,000. The issue for decision is whether petitioners are entitled to a credit under section 44 [1] for the purchase of a new principal residence. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. Petitioners Paul A. Grubbs (hereinafter sometimes referred to as Grubbs") and Brenda S. Grubbs moved to Alaska in May or June of 1974. During late February or early March of 1975, Grubbs heard radio advertising regarding the Tamarack Condominiums located in Anchorage, Alaska. Shortly thereafter, petitioners viewed Unit M-4 at Tamarack Condominiums, which was a model unit. The radio advertising heard by Grubbs referred to the Tamarack Condominiums as newly completed units, and the realtor referred to them as newly finished units. When petitioners viewed the model unit, they also viewed other units and Grubbs saw new appliances, new fences, new shingles, new carpeting, new paint, nails *337 lying around, and plastic sheets. Grubbs also saw people working on finishing the interiors. On March 2, 1975, petitioners entered into an agreement to purchase Unit O-4 at Tamarack Condominiums, located at 4112 Reka Drive, Anchorage, Alaska (hereinafter sometimes referred to as "Unit O-4"). Unit O-4 is a residential unit in a condominium housing project. Petitioners first looked at Unit O-4 within a day or two after they entered into the agreement. When petitioners first looked at Unit O-4, it was occupied; the unit contained beds and other furniture and people were sleeping there at night. On or about May 29, 1975, petitioners purchased Unit O-4. Petitioners moved into Unit O-4 almost immediately after the purchase. To Grubbs, Unit O-4 looked new when viewed in March and looked new when viewed in May.
The official records of the Municipality of Anchorage Telephone Utility with respect to Unit O-4 reveal utility service billings to individuals for the time periods shown in table 1. Table 1 In
Out
William C. Franklin
12-10-73
4-24-74
Donald E. Brodron
5-09-74
7-18-74
Peter Brush
12-12-74
1-27-75
Frank Cumberland
2-18-75
5-09-75
Paul Grubbs
5-23-75
*338 Attached to petitioners' joint 1975 Federal individual income tax return, on which they claimed a $2,000 new home credit on account of their purchase of Unit O-4, was the following certificate: FROM: M.F. Stanton, Inc. SUBJ: Purchase of Residence TO: Internal Revenue Service M. F. Stanton certifies that the residence at 4112 Reka, Unit O-4, was sold to Paul A. Grubbs and Brenda S. Grubbs for $48,900. This price was the lowest offered after 28 February, 1975. Construction began before 26 March, 1975. Marilynn W. Stanton [signature] OPINION Petitioners maintain that they are entitled to the credit under section 44 for the purchase of a new principal residence, on account of their purchase of Unit O-4 on or about March 29, 1975. Petitioners assert that the section 44 credit is allowable for a renovated unit and that their use of Unit O-4 was this unit's original use after the unit's renovation. Respondent argues that (1) the original use of Unit O-4 did not commence with petitioners, (2) petitioners have not proven that Unit O-4 was renovated immediately before petitioners acquired it, and (3) even if Unit O-4 was renovated immediately before petitioners acquired *339 it, Unit O-4 did not qualify for the credit "since renovated buildings do not qualify no matter how extensively renovated." Respondent concedes that petitioners have met all the requirements for the claimed $2,000 credit, except as to whether "the original use of [Unit O-4] commences with the taxpayer". We agree with respondent that petitioners have not proven that the original use of Unit O-4 commenced with them and petitioners have not proven that Unit O-4 was renovated after any prior use as living quarters. Section 44(a) provides for a credit against Federal individual income tax of "an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer." Section 44(b)(1) provides that this credit is not to exceed $2,000. Section 44(c)(1) defines "new principal residence" as: a principal residence (within the meaning of section 1034), the original use of which commences with the taxpayer, and includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, and a mobile home. We have held that even though there was prior nonresidential use (commercial *340 use by a leather goods company) of a property, a taxpayer's use of the property as a principal residence may nevertheless qualify under section 44(c)(1) as "the original use". Gundersheim v. Commissioner, 74 T.C.     (June 12, 1980). In the instant case there evidently was prior use of Unit O-4 by people who stayed there for one or several months at a time. As described by Grubbs, this use evidently was as living quarters and not use of the nonresidential sort we encountered in Gundersheim. Also, this prior use way by people other than petitioners. Cf. Dobin v. Commissioner,73 T.C. 1121 (1980).
On reply brief, petitioners have given us food for thought as to what sort of prior living quarters use may be disregarded. However, they have not clearly suggested a standard and have not presented us with sufficient evidence to carry their burden of proof ( Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; see Popa v. Commissioner,73 T.C. 130, 135 (1979) (concurring opinion)) that the prior living quarters use satisfied any reasonable standard for being disregarded under *341 section 44(c)(1). Petitioners attack the validity of the last sentence of section 1.44-5(a), Income Tax Regs., which provides as follows: A renovated building does not qualify as new, regardless of the extent of the renovation nor does a condominium conversion qualify. In Gundersheim v. Commissioner,supra, we held that the word "building" in the above-quoted sentence must be taken to mean "residence". We have not otherwise examined into the validity of this restriction in the regulations. We see no occasion to do so in the instant case, for petitioners have failed to show that a "renovation" (as distinguished from normal "cleanup" and "patchup" when there is a change in occupancy) took place in Unit O-4 and, if so, whether it took place after the last of the prior living quarters uses. Indeed, such evidence as is in the record suggests that no significant work in Unit O-4 took place at any time during the period from early March 1975 to late May 1975, during most of which period Unit O-4 was being used as living quarters (see table 1, supra). We conclude that petitioners have failed to establish the factual predicates for such legal arguments they have suggested *342 as to what prior uses may be disregarded and as to the effects of renovations. Petitioners maintain that the certificate attached to their 1975 Federal individual income tax return is true and sufficient, since respondent has declined to prosecute the persons that prepared or executed the certificate. Firstly, the certificate is apparently conceded by respondent to satisfy the statutory requirement (sec. 44(e)(4)) that a certificate be attached to petitioners' Federal individual income tax return, but the certificate is not sufficient to establish petitioners' entitlement to the credit; it is not even sufficient to shift the burden of proof as to matters set forth in the certificate. Morris v. Commissioner,73 T.C. 285, 288-289 (1979). Secondly, respondent has conceded the matters set forth in the certificate; the certificate does not deal with the one dispute before us, viz., whether the original use of Unit O-4 commenced with petitioners. Thirdly, whether or not the maker or executor of the certificate may be a "principal" under sections 6653, 7201, 7206, and 7207 (as petitioners urge), is irrelevant to the instant case, since no liability is asserted in *343 the instant case for any addition to tax or sanction under any of these provisions of the Internal Revenue Code of 1954. The instant case deals with petitioners' Federal individual income tax liability for 1975, and in particular their eligibility for the new housing credit under section 44. Any errors petitioners may have been led to by statements of the seller or others in 1975 may or may not be the basis of a claim for damages by petitioners against those who made or authorized the assertedly false or misleading statements. See, e.g., Breisblatt v. Baker-Firestone, Inc.,564 F.2d 11 (CA2 1977). There is no showing in the instant case that any such statements affect petitioners' liability at issue here. See, e.g., Cahn v. Commissioner,358 F.2d 492, 494 (CA9 1966), affg. 41 T.C. 858 (1964); Gheen v. Commissioner,331 F.2d 470, 473 (CA6 1964), affg. a Memorandum Opinion of this Court. [2]
Finally, petitioners' assertions that they "are not guilty of fraud or false representation" and that they "are not acting in a frivolous, delaying, or illegal manner" also are irrelevant *344 to the instant case. We neither conclude nor suspect, on the basis of the record herein, that petitioners have acted in any way improperly or illegally. However, on the basis of the record herein we do conclude that they have failed to carry their burdens of proof as to eligibility for the claimed tax credit. On the one issue for decision in the instant case we hold for respondent. Decision will be entered for the respondent. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.↩
2. T.C. Memo. 1963-122↩.